UNION PACIFIC RAILROAD COMPA-
NY, a corporation, and Oregon-Wash-
ington Railroad & Navigation Company,
a corporation, Plaintiffs,

v.

CHICAGO, MILWAUKEE, ST. PAUL
AND PACIFIC RAILROAD COM-
PANY, a corporation, Defendant.

Civ. No. 72–192.

United States District Court,
D. Oregon.

Nov. 26, 1974.

Randall B. Kester, Walter J. Cosgrave,
Austin W. Crowe, Jr., Portland, Or., for
plaintiffs.

Rockne Gill, J. Laurence Cable, Souther,
Spaulding, Kinsey, Williamson & Schwabe,
Portland, Or., Warren H. Ploeger, Seattle,
Wash., for defendant.

## MEMORANDUM OPINION

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BELLONI, Judge:

Oregon-Washington Railroad and Navi-
gation Company (OWR&N) and Union Pa-
cific Railroad Company (UP) seek a declara-
tion of their rights and obligations under
the Spokane-Marengo contract.

The Spokane-Marengo contract, executed
on April 15, 1912, governed the western
section of a continuous railroad line running
between Marengo, Washington and NP
Crossing in Spokane. Contemporaneously
with the Spokane-Marengo contract, two
other contracts were executed. The Union
Terminal contract governed a section of the
line which connected with the eastern end
of the Spokane-Marengo section. The NP
Crossing contract governed a section of the
line which connected with the eastern end

of the Union Terminal section and ran to NP Crossing.

Under the Spokane-Marengo contract OWR&N gave Chicago, Milwaukee, St. Paul and Pacific Railroad Company (Milwaukee) for a period of 999 years the right of joint use of the section of line that OWR&N was constructing between Marengo and Monroe Street in Spokane. Milwaukee was to pay OWR&N annually for the term of the contract 2¼ per cent of the construction cost of the line. The terms of the NP Crossing contract were identical to those of the Spokane-Marengo contract except under the former Milwaukee was the owner of the track and OWR&N the joint user. Milwaukee and OWR&N jointly owned the Union Terminal contract trackage.

Since 1936 UP has operated OWR&N's tracks and facilities and has performed under the three joint use contracts.

When OWR&N and Milwaukee executed the contracts, they contemplated the existence of a continuous line from Marengo to NP Crossing. OWR&N, building east from Marengo, and Milwaukee, building west from NP Crossing, contracted with the understanding that the separately owned sections would be joined to create one integrated system. The existence of the system was an implied condition of Milwaukee's duty to make rental payments under the Spokane-Marengo contract. When the Union Terminal section of the line was conveyed to the City of Spokane and subsequently removed, rendering the severed line useless for any railroad purpose, the parties' rights and obligations under the Spokane-Marengo contract terminated.

This memorandum opinion shall constitute findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a), and in addition I make the following findings of fact and conclusions of law:

1. The parties to the Spokane-Marengo contract contemplated that the Marengo-Monroe Street section would connect with and become integrated with the Union Terminal section.

2. Under the Spokane-Marengo contract OWR&N was to maintain the line in operating condition for 999 years. As both UP and Milwaukee have discontinued use of the east thirteen miles of the line, continued maintenance of this trackage is a burden on interstate commerce and prevents UP from converting the property to a more useful purpose.

3. Milwaukee assumed the risk that it would discontinue use of the Spokane-Marengo trackage, but did not assume the risk that a portion of the Marengo-NP Crossing line would be destroyed.

4. OWR&N and Milwaukee contemplated that their rights and obligations under the Spokane-Marengo contract would be altered by operation of law upon the occurrence of unstated contingencies.

5. The primary purpose of the 999 year provision in the Spokane-Marengo and NP Crossing contracts was to protect the non-owning railroad from ouster by the owning railroad, and not to provide the owning railroad with a perpetual source of revenue.

6. Neither UP nor Milwaukee were at fault in conveying the Union Terminal and NP Crossing properties to the City of Spokane on May 31 and June 1, 1972. The City was prepared to take the property by eminent domain if the railroads did not accept the negotiated settlement.

7. The Spokane-Marengo contract terminated when ownership of the Union Terminal and NP Crossing portions of the Marengo-NP Crossing line passed to the City of Spokane on June 1, 1972. OWR&N and UP are entitled to a judgment for rental payments from December 1971 to June 1, 1972.

8. Defendants counsel shall prepare a judgment in amount appropriate under finding No. 7. Each party shall bear its own costs.